September 27, 2024

U.S. Equal Employment Opportunity Commission
Pittsburgh Office
William S. Moorhead Federal Building
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222

Attn: Deborah Kane or Investigator

Complainant Contact: Dr. T. Elon Dancy II
[redacted]

Respondent Contact: University of Pittsburgh
4200 Fifth Avenue, Pittsburgh, PA 15260
(412) 624-4141
(412) 383-4553 (Ethics/Investigations Office)

Re: Civil Rights Complaint filed against University of Pittsburgh for Sexual Orientation, Gender Identity, Marital Status and Racial and National Origin Discrimination

## I. Introduction

This complaint is filed with the Pittsburgh Office of the Equal Employment Opportunity Commission ("EEOC") against the University of Pittsburgh ("University") School of Education ("SOE") concerning the conduct of its current dean, Dr. Eboni Zamani-Gallaher, under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title IX of the Civil Rights Act of 1964 ("Title IX") . This complaint asks the EEOC to investigate and remedy the workplace discriminatory and retaliatory professional environment in the University's School of Education experienced by Dr. T. Elon Dancy II, Helen S. Faison Endowed Chair and Executive Director of the Center for Urban Education ("CUE"), which is housed in the University of Pittsburgh School of Education.

The School of Education serves well over 20 employees. Since October 2023, universities nationwide have struggled to respond appropriately to the impact events in Gaza have had on their educational communities. Faculty, administrators, and students have

experienced censorship tactics against wider viewpoints about conditions of life in Gaza and the university's relationship to it, as well as other forms of discrimination in their universities amounting to hostile workplace environments. In addition, University faculty, staff, and students continue to experience sexual orientation, gender identity, and marital status discrimination and retaliation in a larger political context and debate about LGBTQ rights (e.g., marriage rights). It is in this context that the events in the University's School of Education have unfolded.

**Complainant**

Dr. T. Elon Dancy II is the Helen S. Faison Endowed Chair in Urban Education and Executive Director of the Center for Urban Education in the University's School of Education. The Center for Urban Education, which Dr. Dancy directs, co-sponsored programming titled "Gaza for Educators and Organizers", which began November 3, 2023. Dr. Dancy identifies as a Black gay man and is married to a man who espouses Islamic faith. He has been subjected to various forms of discrimination and retaliation consistent with anti-gay harassment and as a direct result of the perception of his support for Palestinian, Arab, and Muslim students and people.

## II. Statement of Jurisdiction

The School of Education is an academic unit in the University of Pittsburgh which is located in the Commonwealth of Pennsylvania. As a public entity, the University is subject to all non-discrimination laws. The earliest instance of attempted censorship of programming took place on November 3 or 6, 2023 with an additional attempt by a former dean later in that month. The below incidents have occurred within the last 180 days with the most recent one occurring September 17, 2024.

## III. Incidents of Anti-Gay Harassment and Anti-Palestinian, Anti-Arab, Anti-Muslim Retaliation

***Dean Zamani-Gallaher Attempts to Persuade Dr. Dancy's Doctoral Student Advisee to Disassociate with Dr. Dancy as Faculty Advisor***

On June 23, 2024, Dr. Dancy's graduate student advisee, [redacted], informed him that Dr. Dancy's supervisor, Dean Zamani-Gallaher, flew him to Pittsburgh, prior to his first semester of enrollment, and attempted to persuade him to disassociate with Dr. Dancy as his doctoral advisor. Specifically, he says she encouraged him to work with another faculty member in his same program area (urban education) or change programs entirely and suggested she could support him with a competing financial package (which he told Dr. Dancy he understood would activate if he switched advisors or program areas). The exchange was witnessed by School of Education faculty, Drs. Shanyce Campbell, Heather McCambly, and Sergio Gonzalez. Dr. Dancy, as a married Black gay man who had also collaboratively organized educational programming for educators to learn about Gaza and the condition of Palestinian life, understands this act to be both discriminatory against him as both gay and married to a man as well as anti-Palestinian and retaliatory for his programming. Dr. Dancy filed a formal complaint about this matter with the University's Title IX office on August 12, 2024. In this complaint, Dr. Dancy noted that "this matter does gender/sexuality/marital status discrimination in messaging that, as a gay person married to a man, I am not only defective in my sexual orientation, but I also cannot perform my gender correctly and therefore can not perform my role as a School faculty member or advisor (or any role) correctly (and so should be stayed away from)". The assumption of Black and LGBTQ people as people "to stay away from" tracks with homophobic bullying patterns characterized by an understanding of LGBTQ people as predatory.

***Dean Zamani-Gallaher Slanders Dr. Dancy in an Open School of Education Meeting***

On September 6, 2024, in a general School of Education meeting of faculty and staff, Dean Zamani-Gallaher stated that, during a Summer 2024 lunch with Dr. Wayne Walters, the

Superintendent of Pittsburgh Public Schools, Dr. Walters observed that he did not feel that the Center for Urban Education (which works with local school districts and schools) was useful or relevant or visible to Pittsburgh Public Schools and that he did not even know the Center was in the School of Education. This humiliated Dr. Dancy, who was virtually present in the meeting, and this also exacerbated his experience of a hostile workplace. Following this incident, Dr. Dancy contacted the superintendent to learn if this was indeed accurate. In a September 9, 2024 email, Superintendent Walters said that this did not accurately characterize him, and that, on the contrary, he wants to build with the Center for Urban Education in a "direct and deeper partnership" with the PPS district office. That same day, Dr. Dancy shared with the Dean and SOE senior administrators a 240-page report that he had submitted to the School of Education for an impromptu external review (also elaborated in the following section) describing years of CUE programs serving Pittsburgh Public Schools. Dean Zamani-Gallaher responded that same day that the then-pending external report would convey the "state of play" of CUE's work. Dr. Dancy perceived this response as both an anti-gay discriminatory and anti-Palestinian retaliatory disregard for his report and nearly seven-year experience as CUE's Executive Director facilitating programs that serve Pittsburgh Public Schools. Dean Zamani-Gallaher used language in that meeting that later showed up in the report about the CUE external review (discussed in the next section). LGBTQ people are historically treated within organizations as pathologically untrustworthy and unethical. Further, slander is defined as the action or crime of making a false spoken statement damaging to a person's reputation.

A related incident occurred prior to the September 6, 2024 meeting. On August 22, 2024, Dr. Dancy withdrew his application for sabbatical leave of absence fearing his absence would be used to foment a retaliatory plan by the Dean. When he submitted his application, he had been advised by the School's Associate Dean, Dr. Michael Gunzenhauser, to offer a plan for interim leadership of the Center for Urban Education as "the dean would likely want to know what I recommended in the event the leave was granted." However, the dean did not engage

the proposal's recommendations for interim Center leadership at all, which suggests discriminatory/retaliatory process in the larger context concerned in this complaint. While Dr. Dancy noted a respect for the dean's decision-making authority in the matter, Dr. Dancy perceives the dean's act of disregarding his proposal as occurring within a pattern of racial/gender/sexuality antagonism described in this complaint. Otherwise, the proposal was not necessary.

***Discrimination/Retaliation through External Review, Unethical Processes, and Libelous Reporting***

On September 17, 2024, Dean Zamani-Gallaher sent Dr. Dancy the results of what was supposed to be an unbiased external review of the Center for Urban Education. The process was out of alignment with university policy regarding external review frequency and timeline, and the Dean has communicated inconsistent rationales for initiating the review. While the Dean shared that other Centers/Institutes in the School would be externally reviewed, the Center for Urban Education underwent review first. Dr. Dancy was not provided timelines on parity with other Centers and was not provided any institutional guidelines to inform the review. He still submitted a 240-page document to inform the external review process but found his data to have hardly informed the external report. Among several fallacious conclusions in this report is the accusation of misogyny against Black women, which is unfounded. It was not made on the basis of interviews conducted with women (Black, white, and of color) who work in CUE and appears to be made on the basis of aberrational hearsay. In Dr. Dancy's over six-year tenure in the role he has never been accused of gender-based discrimination or issues. However, this accusation tracks with stereotypical characterizations of gay Black men. Moreover, it functions as a set up, suggesting Dr. Dancy does not like the dean because she is a Black woman. Libel is defined as the publication of writing or other medium that exposes a person to public hatred, shame, disgrace, or ridicule, or induces an ill opinion of a person, and is not true.

The external report initiates within several contexts of discrimination and retaliation: (1) Dr. Dancy’s "whistleblowing" report to Associate Dean Gunzenhauser about a bias process concerning another person of color faculty member's request to transfer departments (April 24, 2024), (2) CUE’s collaborative programming titled, "Gaza for Educators and Organizers", (3) independent graduate and undergraduate student organizers call for Dean Zamani-Gallaher’s resignation following what they perceived as non-responsiveness to their collective demands for programming related to Palestinian life and education, (4) Dr. Dancy’s graduate student's participation in student protest as a lead organizer, (5) Dr. Dancy’s email to School of Education colleagues confused about their processes in response to student organizing, (6) emails from internal School of Education faculty, including a former dean of the School, expressing disdain for Center programming, expressing his discontinuance of philanthropic support to CUE, and expressing disagreement with Dr. Dancy’s use of the term “genocide” to describe circumstances in Gaza, (7) Dr. Dancy’s email advisement to the Dean about the likelihood for participant bias in the external report process following her invitation to the former dean as an external review interview participant, and (8) the Dean’s invitation to the former dean despite Dr. Dancy’s email advisement. The report product is libelous, retaliatory, harassing, fraudulent, inaccurate, and fallacious. This complaint asks the EEOC to investigate the context for this report, including its initiation, processes, data informing claims, and emails between the Dean and internal and external parties targeting the Center for teaching about Gaza and Palestinian educational life.

Dean Zamani-Gallaher has scheduled a meeting with Dr. Dancy to discuss the report. Understanding himself as working within a hostile environment, Dr. Dancy contacted the Title IX office to request support for the meeting. In response to the inquiry, the University’s Title IX office seemed to breach its own stated procedures regarding confidentiality and need-to-know basis by copying individuals, including a senior university administrator who is a professional colleague of the dean’s, on the office’s response to Dr. Dancy without providing Dr. Dancy with any indication they were going to do so. Dr. Dancy did not contact University Human Resources

fearing additional retaliation as the vice-president of human resources is the spouse of the dean. He is distressed about attending this meeting in a hostile environment.

## IV. Dean Zamani-Gallaher's Actions Violate Title VII and Title IX of the Civil Rights Act of 1964

The University of Pittsburgh is bound by Title VII of the Civil Rights Act of 1964. Title VII of the Civil Rights Act of 1964 protects individuals from unlawful employment practices, particularly those limiting or attempting to "limit, segregate, or classify employees in any way that deprive an individual of employment opportunities or adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." It also prohibits employment practices that cause a disparate impact on the basis of race, color, religion, sex, or national origin, such as those that retaliate for programming related to Gaza and Palestinians. Further, it is unlawful to establish systems, such as those in external review, which measure quantity or quality of production because of discrimination of race/national origin (e.g., Palestinians, Arabs, Muslims) or sex. The University of Pittsburgh is also bound by Title IX of the Civil Rights Act of 1964, which protects individuals from differential treatment based on sexual orientation and gender identity.

Title VII and Title IX claims may be based on the University's own discriminatory actions or based on its executing or permitting a hostile environment under which the Center's Executive Director is "subjected to discriminatory and retaliatory harassment, intimidation, ridicule, and insult that sufficiently severe or pervasive to create a subjectively and objectively hostile or abusive environment."[1]

***Discriminatory and Retaliatory Practices and Hostile Environment***

Dean Eboni Zamani-Gallaher has led a hostile educational and professional environment. First, Dean Zamani-Gallaher's attempts to persuade Dr. Dancy's graduate student to disassociate with Dr. Dancy and her response to his sabbatical leave application can only be

[1] 42 U.S.C. § 2000d; 34 C. F. R. Part 1000.

explained by current anti-Palestinian sentiment in the School of Education, Dr. Dancy's sexual orientation, or both. Second, the Dean's slander at the first School of Education meeting of the academic year was an effort to damage the 20-year reputation of the Center and that of its current Executive Director, Dr. T. Elon Dancy II, in particular. Third, the external report is fraudulent, biased, and libelous. Among several fallacious conclusions is the suggestion that Dr. Dancy is discriminatory against Black women, which is unfounded in his over six-year tenure as the Center's Executive Director. This complaint charges that the suggestion of misogyny actually veils anti-gay harassment–namely, that because Dr. Dancy is gay and married to a man, he is inherently discriminatory toward women. These actions fit both a well-documented pattern of anti-Palestinian sentiment leading to repression nationwide as well as anti-LGBTQ harassment and bullying. While the School of Education outwardly positions itself as "neutral" and articulates a progressive vision of equity and justice, its actions make clear that any programming or ideas related to Palestine are a target for censorship and marginalization, particularly as associated with its LGBTQ faculty and administration.

## V. Requested Relief

Based on the foregoing, the Complainant requests that the EEOC accepts jurisdiction and fully investigates the claims outlined. The Complainant also wishes to emphasize that his concern is the pervasive hostile climate in the University of Pittsburgh School of Education fostered by the practices of the Dean of the School of Education, rather than just isolating specific incidents for redress. In a climate where individual faculty, staff, and students feel uncomfortable publicly complaining of the discrimination and retaliation they experienced, the Complainant offers this complaint on behalf of faculty and program directors who offer wider perspectives on Gaza and Palestinians and on behalf of LGBTQ faculty. Dr. Dancy also submits this complaint with deep concern for the student researchers and teachers in the Center for Urban Education who rely on the Center for their intellectual and academic development and, in

several cases, financial supports. Consequently, Dr. Dancy requests that the discriminatory and retaliatory environment be addressed through the following remedies:

1. Immediate reassignment of Dr. Dancy's reporting line so long as Dr. Eboni Zamani-Gallaher remains School of Education Dean. It is clear Dr. Dancy's supervisor must be reassigned as Dean Zamani-Gallaher is consistently practicing discriminatory and retaliatory behavior consistent with a hostile workplace environment and that, at a minimum, compromise any possibility of fair and ethical treatment. Relatedly, the harm done to the Center for Urban Education, which has endeavored to animate the School's mission, likely necessitates organizational relocation to another University office or unit.
2. Independent investigation into the initiation, processes, and data collected during the external review of the Center for Urban Education. The entire report should be nullified, and all related parties, including external reviewers, investigated for their roles in a fraudulent and libelous report and relationship to the Dean. If applicable, external reviewers' institutions should be notified about their participation in the harm of the Center's Executive Director and breach of academic integrity.
3. Investigation into similar and/or related claims of discrimination and retaliation related to race, sex, gender, religion, sexual orientation, and other protected classes as they exist in the School of Education. The investigation should seek to identify and remedy co-occurring instances of discrimination and retaliation that may resonate with my complaint but map a broader pattern.
4. University support to apply for sabbatical leave of absence including evidence of a consideration of an interim leadership plan. Dr. Dancy should be able to apply for sabbatical leave of absence, like other faculty, without fear of retaliation and with the dignity and integrity of collegial dialogue following long-term leadership of the Center.
5. School-wide training on anti-Palestinian discrimination, anti-Black discrimination, and anti-gay discrimination. School of Education administration, staff, faculty, and students

would benefit from training covering discrimination based on race, gender, sexual orientation, religion, and nationality.

6. Remuneration of any costs incurred related to Dr. Dancy's efforts to establish a safe work environment, including any and all legal fees.

Thank you for your prompt attention to this complaint and requests for relief. Please contact Dr. T. Elon Dancy II to discuss this complaint further.

**VI. Amendment to the Charge/Addendum**

This addendum amends the current charge filed with the Pittsburgh Office of the Equal Employment Opportunity Commission ("EEOC") against the University of Pittsburgh ("University") School of Education ("SOE") concerning the conduct of its current dean, Dr. Eboni Zamani-Gallaher, under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title IX of the Civil Rights Act of 1964 ("Title IX"). This complaint asks the EEOC to investigate and remedy the workplace discriminatory and retaliatory professional environment in the University's School of Education experienced by Dr. T. Elon Dancy II, Helen S. Faison Endowed Chair and Executive Director of the Center for Urban Education ("CUE"), which is housed in the University of Pittsburgh School of Education.

Dr. T. Elon Dancy II was terminated from his roles as Executive Director of the Center for Urban Education and the Helen S. Faison Endowed Chair on October 9, 2024, with a rationale of "a time for new leadership". No other cause was noted. This addendum charges that Dr. Dancy was terminated as an act of retaliation for the reasons outlined in the original charge which violate Title VII and Title IX. The termination follows an unusual chronology requiring EEOC investigation. At the time of the termination, Dr. Dancy was in the process of scheduling a meeting with Dean Zamani-Gallaher, at her request, to discuss the results of the external review and any recommendations or "new directions". In spite of the report's many errors and shortcomings, the dean's e-mail communication about her forthcoming meeting with Dr. Dancy anticipated Dr. Dancy continuing in his roles as CUE Executive Director and Helen S. Faison

Endowed Chair. Before this meeting could even be rescheduled, Dr. Dancy was abruptly terminated from both roles by email with the dean announcing the transition to the entire School of Education community within 30 minutes. It is noted that Dr. Dancy filed an EEOC charge on Oct. 1 and was terminated October 9.

On Wednesday, October 16, 2024, Dr. Dancy received a message from [redacted] a faculty member in the School of Education. In this message, [redacted] notified Dr. Dancy that [redacted] (see Section III) had recently shared additional context about his conversation with Dean Zamani-Gallaher in which she tried to persuade him to disassociate with Dr. Dancy as a faculty advisor. Specifically, [redacted] said that Dean Zamani-Gallaher shared that the reason [redacted] should identify another advisor is because Dr. Dancy "had allowed his students to write a letter calling for her resignation" and that this was a problem only because she was a Black woman. The dean has now made this same student's doctoral funding contingent on Dr. Dancy signing a non-disclosure agreement. Dr. Dancy serves as faculty advisor to a student who organized with other students who called for the dean's resignation following what they perceived to be the dean's non-responsiveness to their written demands to learn about the condition of Palestinian life and education. At a minimum, Dr. Dancy has been singularly targeted among the School of Education's senior administration for this reason as well as his identities as a Black and gay person. Moreover, Dr. Dancy's position as Executive Director of CUE prevented him from joining the union and accessing the rights of the collective bargaining agreement, including grievance processes. This compounds Dr. Dancy's lack of access to a human resources process, given that the dean's husband is the Vice-Chancellor of Human Resources.

Sincerely,

T. Elon Dancy II, Ph.D., Complainant